## CONGREGATIONAL SOCIETY IN TROY *vs.* SOLOMON GODDARD.

WHERE several individuals signed a subscription paper, binding themselves to pay the sums affixed against their names, to a religious society, for the support of a minister of particular religious sentiments, who should be approved by a majority of the church connected with said society, after he had been employed four sabbaths, and on condition that the society should raise, and expend annually in the same manner, an amount equal to the proceeds of said sums subscribed, providing that in case said money was misapplied the amount subscribed was to be forfeited; and where notes were subsequently given by the subscribers, it was *holden* that the employment and payment out of said funds of a person of different religious sentiments from those specified, and of whom the society subsequently refused to approve, operated as a forfeiture of the sums raised on said conditions, and that payment of the notes could not subsequently be enforced.

Notes payable on a contingency may be declared on as ordinary notes of hand, and import a consideration, and where notes were given as above named, it was *holden* that there was a valid and sufficient consideration.

ASSUMPSIT on a promissory note, dated the 27th of January, 1825, on which the plaintiff declared that the defendant, in consideration that a fund of one thousand dollars, or upwards, should be raised for the support of the ministry in the Congregational Society in Troy, promised to pay said society twenty-five dollars on demand and interest annually. It was then averred that a fund of one thousand dollars was raised, and that the defendant had due notice of it.

It appeared that the interest had been annually paid on the note to the 1st of January, 1833.

The defendant plead the general issue, and a verdict was taken by consent for the defendant, subject to the opinion of the court on the following case.

The note declared on was produced, and admitted to be executed by the defendant. An original instrument, of which a copy is hereunto annexed, was then produced by the defendant, and was admitted by the plaintiff to have been executed at the same time with the note, and to have been

a part of the contract on which the note was given. The
plaintiff then proved that in the year 1833 a committee of said Congregational Society employed a Mr. Sweet, who was reputed and proved to belong to the Unitarian denomination, to preach for them ; that he commenced his labors with them in June, of that year, and officiated five Sabbaths ; that between the fourth and fifth Sabbaths of his preaching, the church held a meeting, at which they expressed their disapprobation of said Sweet as an evangelical minister, by vote, a copy of which was handed to one of the committee appointed by the society to procure preaching, but not until the Monday next succeeding the fifth Sunday of said Sweet's officiating with them.

It also appeared, by the oath of the treasurer of said society, that the sum paid the said Sweet for four Sabbaths of his services, and his board, amounted to forty-seven dollars and fifty cents, and that this sum was paid out of the common fund raised by said society, and by the individuals who signed the annexed instrument, after notice of the proceedings of the church as above.

The defendant contended that upon this testimony, and the facts admitted in this case, he was released from any farther liability on said note.

The instrument signed by the defendant and certain other individuals, for the purpose of raising a fund for the support of preaching, was as follows :

" *Know all men by these presents,* That we, the under' signed, do give, grant and consign to the Congregational ' Society in the town of Troy the sums of money set against ' our respective names, to be loaned or vested in other pro-' ductive property, as said society shall direct ; and we give ' said sums on the following conditions, namely.

" ARTICLE 1st. The annual income of said sums of money ' shall be laid out by said Society for the support, in said ' town of Troy, of an enlightened, reputable, regularly au-' thorized, and evangelical minister, such as a majority of

the Congregational Church in said town shall approve after 'having been employed four Sabbaths, provided that said 'Society in said town of Troy shall raise at least a sum 'equal to the proceeds of said donations annually, to be ap-'propriated in the same manner.

"So long as these conditions shall be complied with, the 'said sums of money shall remain good to said Society; but 'when the proceeds thereof shall be misapplied, or the above 'conditions not truly complied with, in such case the said 'sums of money shall be forfeited to us, or our heirs, exe-'cutors and assigns forever.

"For the several sums subscribed by us, we have given 'our notes to said Society, of even date herewith.

"*Dated Jan. 27th*, 1835."

The amount subscribed on said paper exceeded one thousand dollars.

*Edwards*, for the plaintiff.

*E. Parker* and *Wilson*, for the defendant.

UPHAM, J., delivered the opinion of the court.

It is agreed in this case, that the note in suit specifies only part of the contract which was made betwixt the parties, and that the articles of agreement, or subscription, bearing date the same day, and executed at the same time the note was given, constitute a part of the contract. The conditions, therefore, of the donation are part of the conditions of the note. They are, also, conditions precedent which should be averred, or which should be proved, at least, before the plaintiff can be entitled to recover.

One condition expressed on the face of the note, is that the sum of one thousand dollars should be raised before the defendant should be holden liable. It is averred that this amount was raised; and such is admitted to have been the fact, so that this condition presents no objection to the plain-

tiff's recovery. But there are other conditions, not appearing on the face of the note, but in the agreement, which must equally be complied with before the plaintiff can recover.

One condition is, that said Congregational Society shall raise a sum at least equal to the proceeds of said donations annually, to be appropriated in the same manner as the amount raised by said subscriptions.

It does not appear that this sum was raised for the year 1833. It only appears, by the oath of the treasurer of said Society, that the sum paid the clergyman employed, for four Sabbaths of his services, and board—amounting to forty-seven dollars and fifty cents—was paid out of the common fund raised by said Society, and from the amount subscribed by the individuals on the instrument to which this defendant was a party. But this constitutes no evidence that the amount raised by the Society was equal to the proceeds of said subscription. It is not unlikely, however, that this condition may have been complied with.

But there is another objection, which is insuperable; and that is, that the minister employed must be such as a majority of the Congregational Church in said town shall approve, after having been employed four Sabbaths.

As the Society took notes to constitute a fund, which remain to the present time uncollected, except the annual interest on the same, payment of the notes cannot now be enforced, if the conditions on which the fund was constituted have been violated.

The condition, that the clergyman employed should be duly approved by the Church, is imperative. The donors could affix such condition as they saw fit to their donation; and if the Society accepted of it, the presumption would be that the donation was deemed a valuable acquisition, notwithstanding the restrictions imposed upon it, and the Society were bound to act in good faith in its application.

The design of the donors was to contribute liberally of

their own funds, to induce the Society to contribute to the same extent ; and the condition imposed by them was that this money should be appropriated in the employment of a minister whose sentiments they approved, and who might be approbated by the Church worshipping in connexion with the said Society ; and the Church was to have the term of four weeks to approve, or disapprove, of the clergyman employed.

It may be said that the Society would be put to repeated trials and expense before an individual would be found who would be satisfactory ; but, on the other hand, if the donors were to pay the expense during the term of trial, individuals might be designedly employed who it was known would not be approbated ; and thus the entire proceeds of the money subscribed be applied contrary to the design of the donors. The condition, therefore, was essential to secure an application of the funds which would be satisfactory to the donors.

As this condition was not complied with, and an individual was employed whom the Church did not approve, who, notwithstanding this, was paid out of the common fund raised by the Society and by individuals, there has been a misapplication of the money subscribed, and a breach of the condition on which the fund was established.

The articles of subscription are, that " so long as the 'conditions specified therein shall be complied with, the 'money subscribed shall remain good to said Society ; but 'when the proceeds shall be misapplied, or the conditions of 'the donation shall not be truly complied with, in such case 'the money subscribed shall be forfeited to the subscribers, 'their heirs, executors and assigns forever."

No exception was taken in this case as to the declaration, on the ground that it was payable on a contingency, and that it therefore was not strictly a promissory note. Such an exception was overruled in *Odiorne* vs. *Odiorne*, 5 *N. H. Rep.* 315.

It has been customary in this state and Massachusetts to declare upon notes payable out of a particular fund, or on a contingency, in the same manner as on notes strictly negotiable. The acknowledgement of value received in a note not strictly negotiable, is *prima facie* evidence of a consideration. *7 Johns.* 321, *Jerome* vs. *Whitney.*

There is no doubt that the original consideration of this note was sufficient to sustain this action. In *Bowtell* vs. *Cowdin*, 9 *Mass.* 254, a different doctrine was holden; and it was there decided that a promissory note made in aid of a fund for the support of a minister of a parish, was void for want of a consideration.

Notwithstanding the important public bearing of this decision, no reasons were assigned for it. It was merely said that the objection that the promise declared on was made without a good consideration, was well founded. But this principle was found to be applicable to a great variety of analogous cases in important public objects; and in subsequent cases, slightly variant from it, a different doctrine has since been holden. The court have also since remarked, that the case of Bowtell and Cowden did not depend necessarily on the point above adverted to; and that portion of the decision may be considered as overruled.

It is now holden in Massachusetts, that where several individuals subscribe sums to constitute a fund, the income of which is to be devoted to the support of a minister, and a note has been subsequently given, it is a sufficient consideration for the promise, and cannot be contradicted. *Fisher* vs. *Ellis*, 3 *Pick.* 322. The same point was also decided in the *Trustees of the Church and Congregation of Hanson* vs. *Stetson*, 5 *Pick.* 506, and *Amherst Academy* vs. *Cowls*, 6 *Pick.* 427. See, also, *First Religious Society in Whitestown* vs. *Stone*, 7 *Johns.* 112; *George et al.* vs. *Harris*, 4 *N. H. R.* 533; *Trustees of Farmington Academy* vs. *Allen*, 14 *Mass.* 172; *Chester Glass Company* vs.

*Dewey,* 16 *Mass.* 94; *Homes & al.* vs. *Dana,* 12 *Mass.* 190; *Salem Mill Dam. Corp.* vs. *Ropes,* 6 *Pick.* 23; *Bryant* vs. *Goodenow,* 5 *Pick.* 228.

In this case a verdict was taken for the defendant; and for the reasons named on the first point there must be

*Judgment on the verdict.*